Bissell, J.
The Utab Nursery Company through its agents sold a lot of trees and nursery stock to Bittinger, and delivered them *171 to Mm at Montrose. In settlement of the contract price he gave a note on the first of May, 1894, payable to the order of the company for $677.50. On the 20th of January, 1895, the nursery company was largely indebted to a banking concern in Salt Lake City owned by the plaintiff in error, McCornick, who was doing business under the name of McCornick & Company. The indebtedness was some $8,000 or $9,000, and the nursery company turned over a large amount of notes as collateral to secure the payment of a note given by the nursery company to the banking house.^ Among these notes was Bittinger’s. It was transferred by indorsement in the name of the Utah Nursery Company, by P. A. Dix, secretary, was delivered to McCornick before its maturity, and owned by him at the time suit was begun and at the time of trial. This statement of ownership is our legal conclusion from the facts, though these show an indorsement and delivery of the paper, its possession by McCornick, suit oh it by him, and its production in evidence. There is no question about McCornick’s title if the secretary had authority to indorse commercial paper, or his act was ratified unless this title was affected by the proof that the nursery company was paying the expenses of the litigation. In' a deposition taken in Salt Lake one of the witnesses testified that he had been the assignee of the nursery company. On the 23d of February he redeeded the property which he had held as assignee back to the company after an adjustment of its liabilities. There was no proof respecting the terms, character or conditions of the assignment, nor are we advised whether this note or any other commercial paper passed to the assignee. The record discloses that the notes were turned over to McCornick on the 20th of February after the adjustment, though this was three days prior to the time the retransfer was made. The action was a plain suit on Bittinger’s note. The defense was that the note was given as the purchase price of trees and nursery stock, with allegations of a breach of contract and consequent damage. The plaintiff produced the note and offered McCornick’s deposition proving title, *172 the style under which he was doing business, and the character of his holding. It sufficiently appeared that the nursery notes were turned over to him as collateral security for the payment of paper which that concern owed, and that he took them before maturity and without knowledge of any equities in favor of the makers. Thereupon the defendant offered his testimony with respect to the breach. This testimony was objected to, but the court admitted it, apparently on the theory that the proof which had been made respecting the advancement of the expenses of the litigation by the nursery company was sufficient' to raise some question respecting McCornick’s title. This evidence was that after McCornick had paid out money to prosecute the suit, or as fast as he did, a statement was rendered to the nursery company which reimbursed him. In one instance the nursery company sent $25.00 to the attorney to pay some of the expenses. Evidence pro and con was given by both parties respecting the breach of contract, and on the conclusion of the trial the cause was submitted to the jury by the court' under practically one instruction. This substantially was that the only matter for them to determine was whether the note in question on the date named was transferred by the nursery company to the plaintiff as collateral security for an indebtedness due from the company to the plaintiff, and was the note held by McCornick at the time the suit was begun. The jury were told that if they found this fact with the plaintiff their verdict should be for him. Then they were told that, resolving this question against McCornick, they could take into consideration the evidence of the breach of contract and find the damages which Bittinger had sustained. Under these instructions the jury found for the plaintiff for a little more than fifty per cent of his claim. The plaintiff asked some instructions defining a Iona fide holder and his rights. All these instructions were refused. The plaintiff likewise asked one, that if they found from the evidence the nursery company furnished the plaintiff any of the funds to carry on the litigation, it had *173 the right to do it, and that this fact was not enough to impeach the plaintiff’s good faith or his title, but was only a circumstance to be considered, and that it must be supported by other testimony impeaching his good faith or his title, the burden being on the defendant.
As we view the case, the judgment ought not to be permitted to stand. While the plaintiff had a verdict it was for a sum less than he was entitled to under .the testimony. As the record stands, he was entitled to a verdict for the entire sum, and the question of the breach of the contract and the damages sustained ought not to have been submitted to the jury. The trouble was the defendant failed to successfully attack the lona fieles of the plaintiff’s holding. That the note was transferred to McCornick in the usual course of business, as collateral security for an actually existing debt, was abundantly established, nor was there any evidence to the contrary. Under these circumstances, the jury ought to have been told either what a bona fide holder for value was, or directly instructed that under the evidence the plaintiff was a bona fide holder for value and entitled to recover.
Practically the only theory on which the defendant in error defends the action of the court is that the' indorsement did not transfer a title to McCornick which would give him the ordinary rights which come to an indorsee of commercial paper for value before maturity. This is based on the assumption that the secretary of a corporation is without authority to transfer commercial paper or the property of a corporation, but that it requires an indorsement by its executive head or the person who under its charter and by-laws possesses the requisite power, and that it cannot be implied that the authority is with the secretary. To this proposition he cites 2 Cook on Stockholders, § 717, and the case of Blood v. Marcuse, 38 Cal. 590. Both these authorities casually read support his contention. Both the text writer and the case express the general rule, that by virtue of his office a secretary is not vested with authority to assign commercial paper. Without a further examination of the ques *174 tion, and without either accepting or rejecting these authorities, they both concur in the suggestion that even though that may be true, it is quite competent for the corporation by its subsequent acts to ratify what has been done by the secretary without authority. This is always true and the ratification is equivalent to the antecedent grant of power. We find in this case abundant evidence that the Utah Nursery Company ratified the acts of its secretary. The other evidence on which the defendant relies to attack the lona fides of the plaintiff’s holding, the proof that they were paying the expenses of the litigation, of itself shows the nursery company had full knowledge of the transfer, acquiesced in it, and concurred in the acts of their secretary. Under these circumstances, we do not think it lies in the mouth of the defendant when he is sued on paper which he concededly owes to raise the question of the authority of the secretary. We are entirely satisfied that the record shows either authority on the part of the secretary to do what he did, or a ratification which is enough to bind the nursery company. This question being resolved against the defendant in error tbe plaintiff was entitled to recover the full amount of the note unless there was something in the case to bar a judgment in his favor. This we are unable to discover.
The defendant’s contention that the payment of the expenses of the litigation was enough to impeach the plaintiff’s title cannot be conceded. Wherever notes are turned over as collateral security for an antecedent debt, and the transferer either authorizes or consents to their collection and enforcement, he would upon the receipt of the proceeds -only be entitled as a credit on his debt to the net sum received. Where a paper is transferred as collateral security for another debt it can never be true that the transferee, in the absence of some agreement or some circumstance from which an agreement can be implied, is bound to credit his debtor with the full sum collected with no debit for the expenses of collection. The nursery company consented to, if they did not authorize, the collection of these claims, and recognized *175 their obligation for the net incidental expenses, and the result as between these parties is precisely the same against Bittinger as though McCornick had collected the whole sum, and then credited the nursery company with the amount less the expenses. We concede that this circumstance might be taken into consideration in determining the question of title, and the character of the deposit, whether as collateral security or otherwise. All we hold is that this alone is not enough to impeach the title of the holder and not enough to overcome the direct testimony of the plaintiff and his witnesses that the notes were delivered to him as collateral security for a debt which the nursery company owed.
We are quite of the opinion the jury must have misapprehended the law and failed to proceed intelligently because the court did' not give the instructions which the plaintiff asked. To most of them he was directly entitled and the 6th instruction was one which might have been exceedingly important to the protection of the plaintiff’s rights. The jury might have concluded because the nursery company paid the expenses of the litigation, that therefore and therefrom they had a right to conclude the notes were not transferred to McCornick as collateral security for the antecedent debt. Had they been told, as the plaintiff requested, that that fact was not enough to impeach his good faith and his title, but was only a circumstance and must be supported by other testimony the jury might have reached another conclusion on the principal fact which was submitted to their consideration. We hesitate less to reach this conclusion and overturn the judgment because as we look at the record there is no evidence to justify the verdict. Whatever may be the fact respecting the breach of the contract, about which we express no opinion, the defendant was entitled to no benefit therefrom without he first discharge the burden which rested on him to overcome the plaintiff’s testimony supporting his title, show that he was not a holder in good faith, and that he did not receive the note as collateral security for an existing indebtedness.
*176 For these errors which inhere in the record, we are compelled to reverse the judgment and send the case back for a new trial, which is accordingly done.

Reversed.